UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **PAUL GREMILLION, SR.** | **15-13063** |
| | SECTION A |
| DEBTOR | CHAPTER 11 |
| | |
| **PAUL GREMILLION, SR.** | ADVERSARY NO. |
| PLAINTIFF | **15-1080** |
| VERSUS | |
| **HEALTHEDGE INVESTMENT FUND, L.P., CONCENTRIC EQUITY PARTNERS II, L.P. HE-IOM AFFILIATES, LLC** | |
| DEFENDANTS | |

## REASONS FOR DECISION

This matter is before the Court pursuant to a Motion to Dismiss for Lack of Jurisdiction and Alternative Objection to Court's Authority to Enter a Final Order (P-31) filed on behalf of HealthEdge Investment Fund, L.P., Concentric Equity Partners II, L.P. and He-Iom Affiliates, LLC.

## I.  FACTS

In August of 2008, HealthEdge Investment Fund, L.P., Concentric Equity Partners II, L.P. and He-Iom Affiliates, LLC (collectively, "HealthEdge") entered into a Purchase Agreement with Paul Gremillion, Sr. ("Debtor"), Derek Lancaster and Glen Gremillion (collectively, "the Founders") in which HealthEdge agreed to purchase fifty-one percent (51%) of the Founders' ownership interests in Intra-Operative Monitoring Services, LLC ("IOM") for the sum of $26,250,000.00. In September of 2008, Gemino Healthcare Finance, LLC ("Gemino"), on one side, and IOM and certain of its affiliated entities, on the other (collectively, "Borrower"), entered into a Credit

Agreement in which Gemino agreed to loan certain sums to Borrower. Under the Credit Agreement, the loan was to be paid on or before August 31, 2013 (the "Maturity Date"). To secure the financing, HealthEdge and Gemino entered into a Collateral Assignment in which HealthEdge pledged to Gemino as collateral HealthEdge's rights under the Purchase Agreement. Specifically, the "Collateral Assignment of Purchase Agreement"[1] provides, in pertinent part:

> 1. <u>Collateral Assignment</u>. As collateral security for the performance and payment in full of all Obligations under the Loan Documents, Purchaser [HealthEdge] does hereby collaterally assign and transfer to Lender [Gemino], and grant a security interest to Lender (as collateral security for the performance and payment in full of all Obligations), in all right, title and interest of Purchaser in, to and under: (a) the Purchase Agreement, including but not limited to, any and all rights of enforcement with respect to representations and warranties, rights of indemnification, reservations of rights, assignments of warranties, whenever arising or coming into existence; (b) all payments, income and monies now or hereafter due, paid or payable from the Founders or the Shareholder, as applicable, to Purchaser and its assigns under the Purchase Agreement (collectively "<u>Payments</u>"); and (c) all proceeds of the foregoing.
>
> 3. <u>Lender May Enforce Rights Under the Purchase Agreement</u>. Upon the occurrence and continuation of an Event of Default, Lender may enforce, either it its own name or in the name of Purchaser, all rights of Purchaser under the Purchase Agreement in accordance with the terms thereof, and may: (a) compromise or settle any disputed claims as to rights of Purchaser under the Purchase Agreement; (b) give releases or acquittances of rights of Purchaser under the Purchase Agreement; or (c) do any and all things necessary, convenient or proper to fully and completely effectuate the collateral assignment of the rights of Purchaser under the Purchase Agreement pursuant hereto.
>
> 7. <u>Power of Attorney</u>. Purchaser does hereby constitute and appoint Lender, its successors and assigns, as the true and lawful attorney of Purchaser, irrevocably, with full power (in the name of Purchaser or otherwise), upon the occurrence and continuation of any Event of Default under the Loan Documents to file any claims or take any action at law or in equity or as Lender may otherwise deem appropriate or to be necessary or advisable in respect of the Purchase Agreement and/or the Payments. This power of attorney is coupled with an interest and shall be irrevocable.

---

[1] Main case, pleading 60-1.

Prior to the Maturity Date, a dispute arose between HealthEdge and the Founders regarding the Purchase Agreement. HealthEdge and the Founders each alleged various breaches of the Purchase Agreement. The matter went to arbitration, resulting, on March 26, 2015, in an award against the Founders, jointly and severally, in favor of HealthEdge in the amount of $8,098,176.78. ("Judgment").[2]

While arbitration was proceeding, the Maturity Date expired without Gemino receiving payment in full. On November 24, 2015, Debtor filed a voluntary petition for relief under Title 11 Chapter 11 of the United States Bankruptcy Code. Both Gemino and HealthEdge claim that they are the proper party to file and control the claim against Debtor represented by the Judgment. Based upon the language in the Collateral Assignment, Gemino alleges that it has the right to enforce the Judgment. HealthEdge counters that the Collateral Assignment does not empower Gemino to enforce the Judgment. Instead, HealthEdge asserts that Gemino's rights under the Assignment are limited to receipt of any proceeds derived from HealthEdge's collection efforts.

The dispute between Gemino and HealthEdge involves the extent of or limitations on the rights given Gemino under its Collateral Assignment by HealthEdge. Gemino claims that under the Collateral Assignment it may "compromise or settle" any disputed claims as to the rights of HealthEdge in the Purchase Agreement. It may also "give releases or acquittances" of rights of HealthEdge under the Purchase Agreement. Thus, Gemino argues that the Collateral Assignment includes the right to settle, compromise, enforce or release one or all of the Founders from the obligation owed under the Purchase Agreement to HealthEdge and now represented by the

---

[2] Pursuant to HealthEdge's petition to confirm the arbitration award, Judgment was entered in favor of HealthEdge and against the Founders, jointly and severally, in the Superior Court of Fulton County, Georgia.

Judgment. It cites as support for its position paragraphs one (1), three (3) and seven (7) of the Collateral Assignment. These paragraphs purport to give Gemino a full power of attorney to enforce, compromise or release HealthEdge's rights under the Purchase Agreement.

HealthEdge argues that Gemino's authority under the Collateral Assignment does not extend to authority over the compromise, enforcement or release of the Judgment. Instead, HealthEdge argues that whatever the rights Gemino held to compromise, enforce or release the rights of HealthEdge in the Purchase Agreement were lost once a Judgment was entered. HealthEdge cites to paragraph three (3) which states: "Upon the occurrence and continuation of an Event of Default, [Gemino] may enforce . . . all rights of [HealthEdge] under the Purchase Agreement . . . and may: (a) compromise or settle any disputed claim . . . ; (b) give releases . . . of rights of [HealthEdge] under the Purchase Agreement . . . ." It argues that since the dispute over HealthEdge's rights in the Purchase Agreement have been reduced to Judgment, no "disputed rights" exist. As a result, Gemino's right to settle or compromise HealthEdge's disputed rights does not apply.

HealthEdge filed this Motion to Dismiss because it challenges this Court's authority to decide the issue presented between itself and Gemino. HealthEdge asserts that this dispute arises between non-debtor third parties and has no relationship to Debtor's estate.

## II. LAW AND ANALYSIS

The Bankruptcy Reform Act of 1978 provided bankruptcy courts with jurisdiction over core and non-core matters. Core matters were those considered essential to the administration of a bankruptcy case while non-core were those "related to," "arising out of," or "arising in" the bankruptcy case (collectively referred to as "related to" jurisdiction).

While disputes between non-debtors are generally outside the bounds of related to jurisdiction, this is not always the case. The issue presented by this dispute is one of the rare occasions that proves the exception to the rule.

HealthEdge holds a substantial debt against Debtor. A third party, Gemino, claims a security interest in the Judgment. Pursuant to its collateral documentation, Gemino also alleges that it has the right to enforce, compromise or release the Judgment in its own name or that of HealthEdge. In fact, prior to the filing of this case, Gemino entered into negotiations with Debtor for the compromise of the amounts due under the Judgment. When HealthEdge objected to Gemino's exercise of authority, Debtor filed for bankruptcy relief.

The Judgment represents the largest claim against Debtor. The party controlling this claim may well control Debtor's ability to reorganize. It certainly will control the vote on Debtor's plan as well as any objections to confirmation or the administration of Debtor's case. A determination as to which party controls this claim represents a core matter as it is essential to the administration of the bankruptcy estate. *In re Best Products Co., Inc.*, 68 F.3d 26, 31 (2nd Cir. 1995) (resolution of dispute regarding enforcement of a contractual subordination agreement between two non-debtor parties deemed essential to the administration of the estate); *In re Plaza Resort at Palmas, Inc.*, 488 B.R. 50, 55-56 (D. Puerto Rico Mar. 5, 2013) (creditor challenge to secured lien of second creditor deemed to be a core proceeding under 28 U.S.C. §157(b)(2)(O) as it fell "within the realm of other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship"). 28 U.S.C. § 157(b)(2)(B) classifies the "allowance or disallowance of claims against the estate . . ." as a "core" matter. To make a core finding of whether to allow or disallow a claim, the court must necessarily know who owns the

claim. *In re Powell*, 224 B.R. 409-11 (Bankr. E.D. Mo. 1998). The fact that such an inquiry requires an interpretation of state law does not render the matter outside a bankruptcy court's authority. *In re Point Blank Solutions, Inc.*, 449 B.R. 446, 449 (Bankr. D. Del. 2011).[3]

The dispute as to which entity has the power to represent the interests of HealthEdge in connection with this case touches upon the very core power of the bankruptcy court to reorganize and restructure the claims of creditors against the estate. Because HealthEdge and Gemino are of opposite minds regarding the enforcement of the Judgment, determination of their rights *vis a vis* each other is critical to the administration of the case.

For this reason, the Court finds that this matter constitutes a core proceeding because it involves a determination of the proper party with authority to vote, settle, or enforce the claims represented by the Judgment against this estate.

The Court also has the constitutional authority to decide this matter as the concerns expressed by *Stern v. Marshall*, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), are not implicated. While *Stern* cautions against the exercise of authority over actions by a debtor against a non-creditor third party, actions by a creditor against the debtor's estate fall squarely within the bankruptcy court's constitutional authority. *See Langenkamp v. Culp*, 498 U.S. 42, 45, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) (respondents lodged claims against the estate, "thereby bringing themselves within the equitable jurisdiction of the Bankruptcy Court").

"[T]he restructuring of debtor-creditor relations . . . is at the core of the federal bankruptcy power." *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71, 102 S.Ct. 2858,

---

[3] *See also In re Ames Dept. Stores, Inc.*, 319 Fed. Appx 40, 41 (2nd Cir. 2009) (creditor's state court action against third party seeking to recover estate proceeds was properly removed to bankruptcy court).

2871, 73 L.Ed.2d 598 (1982). Part and parcel of that restructuring process is the determination of who has a claim against the debtor's estate. Such a resolution is necessary as part of the reorganization process, placing it squarely within a bankruptcy court's constitutional authority. *In re Washington Coast I, L.L.C.*, 485 B.R. 393, 405 (9th Cir. BAP 2012) (bankruptcy court had constitutional authority to adjudicate state law lien priority claim as resolution of lien priority dispute is part and parcel of claims resolution process and, as such, integral to the restructuring of the debtor-creditor relationship); *In re Frazer*, 466 B.R. 107, 113-114 (Bankr. S.D. Tex. Mar. 5, 2012) (bankruptcy court had constitutional authority to adjudicate state law claim regarding priority of creditors' liens as claims against the estate were being determined).

### III. CONCLUSION

Based upon the above, the Court finds it properly has jurisdiction and constitutional authority over the issue of whether Gemino or HealthEdge is a creditor of the estate. HealthEdge's Motion to Dismiss for Lack of Jurisdiction and Alternative Objection to Court's Authority to Enter a Final Order (P-31) is **DENIED**. An Order in accord with these Reasons will be rendered.

New Orleans, Louisiana, March 8, 2016.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge