UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                      CASE NO.

**PAUL GREMILLION, SR.**                                              **15-13063**
                                                                                            **SECTION A**
DEBTOR                                                                              CHAPTER 11


**PAUL GREMILLION, SR.**                                              ADVERSARY NO.

PLAINTIFF                                                                          **15-1080**

VERSUS

**HEALTHEDGE INVESTMENT FUND, L.P.,**
**CONCENTRIC EQUITY PARTNERS II, L.P.**
**HE-IOM AFFILIATES, LLC**

DEFENDANTS

## **OPINION**

The Motion for Partial Summary Judgment[1] filed on behalf of Gemino Healthcare Finance, LLC ("Gemino") came before the Court for hearing on February 19, 2016. Following the hearing, the parties requested additional time to prepare post hearing briefs, which was granted. On March 31, 2016, the last brief was filed, after which the Court took the matter under advisement.

**I. FACTS**

In August 2008, HealthEdge Investment Fund, L.P., Concentric Equity Partners II, L.P. and He-Iom Affiliates, LLC (collectively, "HealthEdge") entered into a Purchase Agreement with Paul Gremillion, Sr., Derek Lancaster and Glen Gremillion (collectively "Founders") for HealthEdge's purchase of fifty-one percent (51%) of Founders' ownership interests in Intra-Operative Monitoring Services, LLC ("IOM"). The purchase price was $26,250,000.00.

---

[1] Pleading 39.

In September 2008, Gemino, on one side, and IOM and certain of its affiliated entities, on the other (collectively "Borrower"), entered into a Credit Agreement. Under its terms, Gemino agreed to loan certain sums to Borrower ("Obligations") payable on or before August 31, 2013 ("Maturity Date"). HealthEdge guaranteed repayment of the Obligations through a Collateral Assignment pledging HealthEdge's rights under the Purchase Agreement in favor of Gemino.

Prior to the Maturity Date, a dispute arose between HealthEdge and Founders with each alleging breach of the Purchase Agreement by the other. Upon learning of HealthEdge's claims against Founders, Gemino notified both HealthEdge and Founders that any and all payments due to HealthEdge in connection with the Purchase Agreement were to be paid to Gemino until the Obligations were paid in full.[2] Gemino, however, did not join in HeathEdge's claims against Founders.

The claims by Founders against HealthEdge and HealthEdge's counter-claims against Founders arising from the Purchase Agreement went to arbitration. On March 26, 2015, HealthEdge prevailed and obtained an award against Founders in the amount of $8,098,176.78 ("Judgment").[3]

While arbitration was proceeding, the Maturity Date expired but Gemino was not repaid. Gemino asserts that it has the right to collect the Judgment from Founders. In connection with its collection efforts, Gemino has engaged in settlement negotiations with Founders and allegedly Founders have agreed to pay $5,800,000.00 in full satisfaction of the Judgment. On November 24, 2015, Paul Gremillion ("Debtor") filed a Voluntary Petition for Relief under Title 11, Chapter 11

---

[2] Pleading 39-4, p. 3. Notice was made on November 30, 2012.

[3] Pursuant to HealthEdge's petition to confirm the arbitration award, judgment was entered in favor of HealthEdge and against Founders, jointly and severally, in the Superior Court of Fulton County, Georgia.

of the United States Bankruptcy Code.

HealthEdge objects to any negotiated settlement by Gemino. It asserts that while Gemino is entitled to receipt of the proceeds derived from the Judgment, it lacks the right to negotiate or force HealthEdge to accept a settlement for the amounts due.

The issue presented by this Motion involves a determination of which party, Gemino or HealthEdge, has the authority to file and pursue claims against the Debtor as well as negotiate and vote on any plan of reorganization submitted by Debtor.

## II. LAW AND ANALYSIS

### A. Jurisdiction

Because the Judgment represents the majority of debt owed by Debtor, the party who controls both the claim and its disposition will have a major impact on the administration and reorganization of Debtor's estate. For this reason, the Court has exercised related to jurisdiction over this dispute. The Court adopts and incorporates its Reasons for Decision previously entered on this subject.[4]

### B. The Collateral Assignment

Under the terms of the Collateral Assignment, Pennsylvania law controls. The Collateral Assignment provides, in pertinent part:

> 1. <u>Collateral Assignment</u>. As collateral security for the performance and payment in full of all Obligations under the Loan Documents, Purchaser [HealthEdge] does hereby collaterally assign and transfer to Lender [Gemino], and grant a security interest to Lender (as collateral security for the performance and payment in full of all Obligations), in all right, title and interest of Purchaser in, to and under: (a) the Purchase Agreement, including but not limited to, any and all rights of enforcement with respect to representations and warranties, rights of indemnification, reservations

---

[4] Pleading 53.

of rights, assignments of warranties, whenever arising or coming into existence; (b) all payments, income and monies now or hereafter due, paid or payable from the Founders or the Shareholder, as applicable, to Purchaser and its assigns under the Purchase Agreement (collectively "Payments"); and (c) all proceeds of the foregoing.

* * *

3. Lender May Enforce Rights Under the Purchase Agreement. Upon the occurrence and continuation of an Event of Default, Lender may enforce, either it its own name or in the name of Purchaser, all rights of Purchaser under the Purchase Agreement in accordance with the terms thereof, and may: (a) compromise or settle any disputed claims as to rights of Purchaser under the Purchase Agreement; (b) give releases or acquittances of rights of Purchaser under the Purchase Agreement; or (c) do any and all things necessary, convenient or proper to fully and completely effectuate the collateral assignment of the rights of Purchaser under the Purchase Agreement pursuant hereto.

* * *

7. Power of Attorney. Purchaser does hereby constitute and appoint Lender, its successors and assigns, as the true and lawful attorney of Purchaser, irrevocably, with full power (in the name of Purchaser or otherwise), upon the occurrence and continuation of any Event of Default under the Loan Documents to file any claims or take any action at law or in equity or as Lender may otherwise deem appropriate or to be necessary or advisable in respect of the Purchase Agreement and/or the Payments. This power of attorney is coupled with an interest and shall be irrevocable.

Under Pennsylvania law, when a written agreement "is clear and unequivocal, its meaning is determined by its contents alone."[5] Gemino's right to settle any disputes arising under the Purchase Agreement stems from the clear and unequivocal language of paragraph three (3). When the credit facility matured on August 31, 2013,[6] Gemino was not paid in full. Borrower's failure

---

[5] *Gaffer Ins. Co., Ltd v. Discovery Reinsurance Co.*, 936 A.2d 1109, 1113 (Pa. Super. Nov. 16, 2007) (internal citations omitted); *see also Humberston v. Chevron U.S.A., Inc.*, 75 A.3d 504, 510 (Pa. Super. Aug. 20, 2013) ("When construing agreements involving clear and unambiguous terms, [a] Court need only examine the writing itself to give effect to the parties understanding.").

[6] Pleading 39-2, Credit Agreement between Borrower and Gemino, Section 201(c).

to satisfy the Obligations constituted an Event of Default.[7]  As a result, Gemino had the right to enforce all of HealthEdge's rights under the Purchase Agreement.  Gemino's rights included the right to receive any payments due to HealthEdge and to compromise or settle any disputed claims HealthEdge had under the Purchase Agreement.

Initially however, Gemino did not exercise its rights in full.  Upon learning of HealthEdge's claims under the Purchase Agreement, Gemino notified both HealthEdge and Founders that all payments due to HealthEdge in connection with the Purchase Agreement were to be paid to Gemino until the Obligations owed to Gemino were satisfied.  With that notification in place, Gemino allowed HealthEdge to pursue its claims which resulted in the Judgment.

The Judgment confirms HealthEdge's rights and quantifies its damages for breach of the Purchase Agreement.  The question presented is whether the transformation of HealthEdge's rights under the Purchase Agreement into the Judgment somehow diminished Gemino's rights under its Assignment

HealthEdge's argument stems from two provisions of the Assignment.  First, HealthEdge argues that Gemino waived its right to pursue collection because it did not initially exercise that right when HealthEdge brought claims against Founders.[8]  Second, HealthEdge argues that the Judgment is not a disputed claim and only disputed claims may be enforced by Gemino.

---

[7]  Pleading 39-2, Credit Agreement between Borrower and Gemino, Section 8.01(a).

[8]  *See Davis v. F.W. Financial Services, Inc.*, 317 P.3d 916, 925-926 (Or. App. Dec. 26, 2013) (secured creditor did not waive its rights to collect funds pledged as collateral by failing to initially exercise its elective remedies under collateral assignment); *Frierson v. United Farm Agency, Inc*., 868 F.2d 302, 305 (8th Cir. 1989) (same); *but see Shales v. Pipe-Liners, Ltd.*, 2012 WL 4793499 at *3 (N.D. Ill. Oct. 9, 2012) (by failing to promptly take action to collect accounts pledged as collateral, secured creditor constructively waived its security interest). The instant action is distinguishable from *Shales* in that Gemino took action in promptly notifying all involved parties of its claim to HealthEdge's rights under the Purchase Agreement.

### 1. Gemino's Right to Collect On Its Collateral

13 Pa. C.S.A. § 9102 defines "Account" as: "(1) . . . [a] right to payment of a monetary obligation, whether or not earned by performance: (i) for property which has been or is to be sold, . . . ." The Purchase Agreement memorialized the sale of IOM stock between HealthEdge and Founders. Therefore, contract rights under the Purchase Agreement are an "Account" under the U.C.C.

HealthEdge argues that under the Collateral Assignment, Gemino was only entitled to enforce 'disputed claims' arising out of the Purchase Agreement. Having liquidated the 'disputes' arising from the Purchase Agreement to judgment, HealthEdge now argues that Gemino has lost its ability to enforce those rights. However, 13 Pa. C.S.A. § 9607(a) provides, in pertinent part, that a secured party:

> (3) may enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor and with respect to any property which secures the obligations of the account debtor or other person obligated on the collateral.

Pennsylvania law clearly grants Gemino the right to pursue or enforce HealthEdge's rights in an Account held as collateral. Therefore, Gemino's right to enforce the terms of the Purchase Agreement are not dependent on any grant of authority under the Collateral Assignment. As such, they are not limited by the Collateral Assignment's reference to 'disputed claims.'

### 2. Gemino's Rights in The Judgment

A security interest in collateral survives the exchange, disposition, substitution or modification of the collateral.[9] Neither party disputes that Gemino retains a security interest in the Judgment. But HealthEdge argues that once the Judgment was secured, Gemino's rights changed from those specified by the Collateral Assignment of an Account to those in a proceed of the Account. As a proceed, HealthEdge maintains that Gemino is only entitled to receive the cash or property collected for its payment, but is not entitled to exercise control over the collection process.

In response, Gemino argues that its initial reluctance to enter into the litigation between HealthEdge and Gemino did not waive its right to control the enforcement of the dispute at a later date. It also asserts that the Judgment is merely a confirmation of the claims flowing from the Purchase Agreement and therefore is not a proceed.

HealthEdge cites 13 Pa Stat. And Cons Stat. Ann. §9102(a) for the proposition that the Judgment is a proceed. That statute states, "[W]hatever is acquired upon the sale, lease, license or exchange or other disposition of collateral" is a proceed. In support of this assertion, HealthEdge also refers the Court to *In re Bell Fuel Corp*.[10]

In *Bell*, a creditor held a security interest in all the borrower's property, including intangibles. During the existence of the credit arrangement, the borrower incurred damages as a

---

[9] 13 Pa. C.S.A. § 9315(a)(1): "a security interest . . . continues in collateral notwithstanding sale, lease, license, exchange or other disposition thereof unless the secured party authorized the disposition free of the security interest . . . ." The fact that Gemino's security interest in the collateral was transformed to the Judgment does not render it outside the scope of the provisions of 13 Pa. C.S.A. § 9315(a)(1). While 13 Pa. C.S.A. § 9109(d)(9) provides that "[t]his division" does not apply to judgments, an exception to the exclusion are judgments "taken on a right to payment which was collateral."

[10] *In re Bell Fuel Corp*. 99 B.R. 602 (Bankr. E.D. Pa. May 4, 1989), *aff'd sub nom. Meridian Bank v. Bell Fuel Corp.*, 891 F.2d 281 (3rd Cir. 1989) and *aff'd sub nom. Appeal of Official Creditors' Committee of Bell Fuel Corp.*, 891 F.2d 282 (3rd Cir. 1989).

result of the interruption of its business. When its claims against its insurance policy were rejected, it sued and the carrier was ordered to pay damages. After judgment was obtained, its secured lender asserted a right to the payments ordered against the carrier.

The Court first found that the secured lender held a perfected security interest in the cause of action against the insurer. As such, any payments on that claim were proceeds of its collateral. The Court did not hold that the judgment itself was a proceed, merely the payments made on the judgment. This is not a surprising result, although it is not analogous to this circumstance at least as to the arguments being advanced. No other cases were cited in support of either party's position and this Court could not find any on point.

When a judgment is rendered on a contract, it confirms the right of a party in the contract. As such, the judgment, by merger, is the manifestation of the contract and the rights of the prevailing party. As argued by Gemino:

> Pennsylvania law provides that "[a] judgment is the 'final determination of the rights and obligations of the parties in a case.'" *ISN Bank v. Rajaratnam*, 2013 PA Super 304, 83 A.3d 170, 176 (2013) (*quoting Zaleppa v. Seiwell*, 9 A.3d 632, 640 (Pa. Super. 2010)). "Under the doctrine of merger, the right to recover set forth in the complaint is settled between the parties upon entry of the judgment." *Smith v. I.W. Levin & Co.*, 800 A.2d 374, 379 (Pa. Commw. Ct. 2002). Pennsylvania law is consistent with Louisiana law on this subject. *See*, *e.g.*, *Schouest v. Franke*, 526 So.2d 1342, 1345 (La. App. 5 Cir. 5/16/88) ("It's a rudimentary proposition of law that an obligation is merged with the judgment of which it is a legal predicate, so that the obligation no longer has a distinct, separate, or self-subsistent existence.").
>
> Other jurisdictions also recognize this legal theory. *See*, *e.g.*, *Jarrett v. Dillard*, 167 So.3d 1147, 1151 (Miss. 2015) (recognizing merger theory). When contractual matters are disposed of in a final adjudication, the courts have held consistently that the contract itself is merged into the final judgment. *See*, *e.g.*, *Kenny v. Kenny Indus.*, 2012 Ill. App. Ct. (1st) 111782, ¶ 15, 976 N.E.2d 1040, 1045, *as modified on denial of reh'g* (Sept. 4, 2012) ("The merger doctrine states that once a party obtains a judgment based upon a contract, the contract is entirely merged into the judgment.").

8

The Court agrees with this reasoning. A judgment does not change the contract, nor does it eliminate or expand the prevailing party's rights under the contract. A judgment is not a sale or disposition of collateral. At most it interprets its terms and quantifies the obligations owed leaving to the parties the same rights now reduced to judgment. Further, the rendering of any judgment does not automatically result in the satisfaction of the obligations owed to the judgment creditor.

For these reasons, the Judgment is not a proceed but the embodiment of the contract itself and the obligations owed to HealthEdge. While the Judgment provides authority for the enforcement of the obligations due under the Purchase Agreement, it is not the satisfaction of those obligations. Unlike a proceed, it is not derivative of the contract it confirms, as it is not payment or property obtained from the contract. Instead, it is the recognition of the right to enforce the debt.

Because a judgment does not create new rights but merely quantifies the rights that already exist, it cannot be considered a proceed of the contract. As a judgment, it confirms the rights held by HealthEdge. By the Collateral Assignment, Gemino retains the right to enforce those interests.

## III. CONCLUSION

For the foregoing reasons and by virtue of its Collateral Assignment, Gemino has the power and authority to enforce the Judgment. As such, it has authority to file a claim on behalf of HealthEdge; negotiate treatment of the claim whether by payment, settlement or treatment under a plan of reorganization; and oppose or support by vote or objection any proposed plan of

reorganization. A Judgment in accord with this Opinion will be separately rendered.

New Orleans, Louisiana, April 19, 2016.

                                      Hon. Elizabeth W. Magner
                                      U.S. Bankruptcy Judge